**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LUIS ARNAUD, *on behalf of*
*himself and others similarly situated*,

        Plaintiff,

        v.

NBCUNIVERSAL MEDIA, LLC,

        Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff LUIS ARNAUD ("Plaintiff ARNAUD," or "Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, pursuant to this Class Action Complaint against NBCUNIVERSAL MEDIA, LLC ("UNIVERSAL" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1.     This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of marketing and advertising unlimited beverage refills for a calendar day with the purchase of its Coca Cola Freestyle Souvenir Cup product, and the ability to purchase

unlimited refills on subsequent days with the possession of the souvenir cup for an additional price. (together the "Products").

2.    Defendant advertised to Plaintiff that the purchase of the Products includes unlimited beverage refills from any of the many Coca-Cola Freestyle machines located throughout UNIVERSAL'S three (3) parks: UNIVERSAL Studios, UNIVERSAL'S Islands of Adventure, and UNIVERSAL'S Volcano Bay. Defendant sells the Products with an attached RFID chip. The RFID Chip, which stands for Radio Frequency Identification, works similarly to a bar code, in that it communicates via radio frequency, and is scanned by the Coca-Cola Freestyle machine upon attempting to get a refill.[1] If you do not pay for the Products, or if you do pay but the calendar day is over, then the Coca-Cola Freestyle machines are able to read this from your RFID chip and deny you a beverage.

3.    What Plaintiff did not know was that the RFID Chip also tracks how often he received his refills, and the machine denied plaintiff a refill despite Defendant's claims and advertisements. The RFID chips and Coca-Cola Freestyle machines are programmed by Defendant to limit refills to every ten (10) minutes, for a total of only six (6) per hour, Making its "Unlimited" representations false and misleading.

4.    Defendant sold and continues to sell souvenir cups and beverage refills with deceptive and misleading labeling and advertisement.

5.    Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and false advertising. These statutes include:

   a.    Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;

---

[1] https://www.techopedia.com/definition/24272/rfid-chip

b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

c. Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;

d. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

e. California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

f. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

g. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

h. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

i. District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*;

j. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

k. Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;

l. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480-1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;

m. Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

n. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*;

o. Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;

p. Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;

q. Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;

r. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;

s. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;

t. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

u. Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

v. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

w. Michigan Consumer Protection Act, § 445.901, *et seq.*;

x. Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

y. Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

z. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et seq.*;

bb. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

*cc.*   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

*dd.*   New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

*ee.*   New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*;

*ff.*   New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*;

*gg.*   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, and New York False Advertising Law, N.Y. Gen. Bus. Law § 350, *et seq.*;

*hh.*   North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15-01, *et seq.*;

*ii.*   North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.*;

*jj.*   Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01, *et seq.*;

*kk.*   Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

*ll.*   Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

*mm.*   Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.*;

*nn.*   Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

*oo.*   South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

*pp.*   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37-24-1, *et seq.*;

*qq.*   Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;

*rr.*   Texas Stat. Ann. § 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.*;

*ss.*   Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;

*tt.*   Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

*uu.*   Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.*;

*vv.*   Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

*ww.*   West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

*xx.*   Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*;

*yy.*   Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

6.   Plaintiff bring this proposed consumer class action on behalf of himself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale.

7.   Defendant should be either enjoined from representing that the Products include unlimited refills on the Product labels, advertisements, and throughout its amusement parks or

Defendant should be required to affirmatively disclose to consumers that the refills are limited to six per hour.

## JURISDICTION AND VENUE

8.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

9.    This court has personal jurisdiction over Defendant because Defendant's principal place of business is in New York State.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because both Plaintiff and Defendant reside in this District.

## PARTIES

*Plaintiff*

11.    Plaintiff LUIS ARNAUD is, and at all times relevant hereto has been, a citizen of New York State and a resident of Bronx County. On July 30, 2019 Plaintiff ARNAUD purchased a Coca-Cola Freestyle Souvenir Cup at UNIVERSAL'S Island of Adventure, in Orlando Florida for the premium price of $16.99, on July 31, 2019 Plaintiff returned to UNIVERSAL'S Volcano Bay, and reactivated his souvenir cup for $8.99. At Volcano Bay, Plaintiff noticed his refills were not unlimited after attempting to quench his thirst and refill his cup again. *See* **EXHIBIT A**. Plaintiff ARNAUD purchased the Products relying on Defendant's representations made all throughout the parks. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff ARNAUD was injured when he paid money for products that did not deliver the qualities and

quantities it promised. He paid the above sum on the assumption that he was purchasing products that would conveniently allow him to refill his cup whenever and however many times he wanted. Plaintiff had specifically seen the "unlimited" misrepresentation all throughout the UNIVERSAL parks. He would not have been willing to pay the sum he paid had he known that the Products did not provide unlimited refills and were mislabeled and falsely advertised. Defendant delivered Products with significantly less value than was affirmed by their representations, thereby depriving him of the benefit of his bargain and injuring him in an amount up to the purchase price. Damages can be calculated through expert testimony at trial.

### *Defendant*

12.     Defendant NBCUNIVERSAL MEDIA, LLC, is a corporation organized under the laws of Delaware with its headquarters located at 30 Rockefeller Plaza, New York, NY 10112, and agent and address for service of process at C T Corporation System, 28 Liberty Street, New York, NY 10005.

13.     Defendant develops, manufactures, markets, and sells the Products at its Universal Amusement Parks in Orlando Florida.

14.     The advertisements for the Products, relied upon by Plaintiff, are approved by Defendant and its agents, and are disseminated by Defendant and its agents. The advertisements for the Products are designed to encourage consumers to purchase the Products based on those false representations, and misleads reasonable consumers, including Plaintiff and the Class. Defendant owns, manufactures and distributes the Products and authorize the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

**Defendant's "Unlimited" Representations Are Misleading to Reasonable Consumers**

15.     Defendant misled consumers into believing that they will provide unlimited refills with its false labeling claims to this effect. However, Defendant fails to disclose that its Coca-Cola freestyle machines are programmed to limit you to one (1) sixteen (16) oz refill every ten (10) minutes, for a total of only six (6) refills per hour.

16.     The MacMillan Dictionary defines "unlimited" as "with no limits relating to amount, time, freedom, etc."[2]

17.     By definition, Plaintiff's and the class' refills were not unlimited because they were only afforded a finite number of beverages for a limited amount of time. Plaintiff and the class were misled, and did not know and had no reason to know that Defendant's representations were misleading until after their initial purchase.

**Defendant's Misrepresentations Were Material to, and Would Be Reasonably Relied Upon By, Reasonable Consumers**

18.     Plaintiff and Class members reasonably relied on Defendant's false and/or misleading representations that the Products came with unlimited refills for the rest of the calendar day. **EXHIBIT B** depicts some of the misrepresentations consumers may have been exposed to at the UNIVERSAL parks throughout the years.

19.     At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products were misbranded and misleading, and would not have bought the Products had they known the truth about them.

---

[2] https://www.macmillandictionary.com/us/dictionary/american/unlimited

7

20.     A representation that a products include unlimited beverage refills is material to a reasonable consumer when deciding to purchase it. Plaintiff did, and a reasonable consumer would, attach importance to whether Defendant's Products allowed them to refill their cups whenever they wanted and however many times they wanted. Defendant would not have included these representations on the Products and throughout the parks if this was not going to influence consumer behavior.

**Plaintiff and Class Members Were Injured as a Result of Defendant's Misrepresentations**

21.     Plaintiff and Class members were injured when Defendant denied them the full benefit of their bargain. They paid money for beverage Products that they were led to believe were unlimited in time and quantity, but consumers then received Products that were limited, which have significantly less value. Plaintiff and Class members were thus deprived of the benefit of their bargains. Plaintiff and Class members would not have purchased the Products or would only have been willing to pay less for them, had they known the truth about them. Plaintiff and Class members were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial.

22.     By representing that the Products are  "unlimited," Defendant seeks to capitalize on consumers' preference for self-service and unlimited style consumption. With accelerated technological advancement in recent years, a Forbes article examining the self-serve retail model notes:

> Machines are now connected to consumers through cashless payment technology, and they bring experiences that are both more convenient and personal, thanks to new technology such as AI and machine learning. The ability to connect with consumers who want

to be known, and who want to be served in a personal way but don't want to have to interact with a human, is now a reality. [3]

23.     From a consumer perspective, an article depicting why customers prefer unlimited self-service analogously explains it as so:

> Think about it: people don't want to wait ten minutes in the hot hot sun for the ice cream man to dole out a single scoop of half-melted vanilla. They want to be able to walk up to an all-you-can-eat ice cream dispenser whenever they want, however many times they want and pull whatever flavor they want.[4]

24.     Given the importance Plaintiff and the class place on unlimited self-service, they paid a price premium for the Products.

25.     Courts regularly uphold actions based on payment of a price premium due to a seller's misrepresentations. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that Plaintiffs paid more than she would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.' . . . . Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) ("Plaintiffs claim that, but for Defendant's 'unfair and deceptive practices,' they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendant's misrepresentations,' and allege that they deserve damages in the amount of either the purchase

---

[3] https://www.forbes.com/sites/forbescommunicationscouncil/2019/06/14/three-self-serve-retail-models-to-connect-and-engage-with-your-customers/#1f8a53b77ecb
[4] https://mindtouch.com/resources/customers-prefer-self-service

prices, or the price premiums that they paid for Smart Balance. *Id.* ¶ 81. Accordingly, the Court

finds that Plaintiffs have adequately alleged injury under GBL § 349.").

**Defendant Has an Intent to Mislead**

26.     Defendant knew that its "unlimited" claims are misleading.

27.     Given the importance and premium that consumers attach to unlimited style self-

serve consumption, discussed above, Defendant has a natural interest in misleading consumers as

detailed above, as their deceptions and misleading omissions provide a clear marketing and

economic advantage.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made purchases of
> the Products during the applicable limitations period, and/or such
> subclasses as the Court may deem appropriate ("the Nationwide
> Class").

29.     The proposed Class excludes current and former officers and directors of Defendant,

members of the immediate families of the officers and directors of Defendant, Defendant's legal

representatives, heirs, successors, assigns, any entity in which they have or had a controlling

interest, and the judicial officer to whom this lawsuit is assigned.

30.     Plaintiff reserves the right to revise the Class definition based on facts learned in

the course of litigating this matter.

31.     This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of

the Federal Rules of Civil Procedure. While the exact number and identities of other Class

members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are

millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

32.     Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

    a.    whether claiming "unlimited" in regard to beverage refills when the Products offer a finite number of refills is false and misleading;

    b.    whether Defendant deprived Plaintiff and Class members of the benefit of their bargains because the Products purchased had less value than what Defendant purported;

    c.    whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

    d.    whether Defendant should be barred from marketing the Products as being "unlimited."

33.     Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal law, Florida law, and the laws of the other 49 states. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise

11

from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

34.     Plaintiff will fairly and adequately represent and pursue the interests of the Class and has retained highly competent counsel experienced in prosecuting class actions. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

35.     Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

36.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

37.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuse to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

38.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

39.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

40.     Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

41.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### BREACH OF EXPRESS WARRANTIES
**(Brought on behalf of the Nationwide Class under Florida Law)**

42.     Plaintiff ARNAUD realleges and incorporates herein by reference all allegations contained above as if fully set forth herein and further alleges as follows:

43.     Defendant expressly warranted that its Product delivers unlimited refills.

44.     At all times relevant to this action, Plaintiff's use of the Products was consistent with the purposes for which Defendant directly and indirectly advertised, marketed and promoted the Products, and Plaintiff's use of the Products was reasonably contemplated, intended, and

foreseen by Defendant at the time of the distribution and sale of the Products, Plaintiff's use of the Products was thus within the scope of the above-described express warranty by Defendant.

45.     Defendant disseminated its "Unlimited" warranty to consumers such as Plaintiff and Class members through the Products' labeling and advertisements.

46.     In response to Defendant's promises and express statements, Plaintiff and Class members relied on such affirmations and warranties.

47.     Defendant breached these warranties by delivering Products which do not live up to its advertised number of refills.

48.     As a proximate and foreseeable result of Defendant's failure to provide accurate information regarding the Product's efficacy, Plaintiff and Class members suffered economic injury.

## COUNT II

**VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA") Fla. Stat. Ann. § 501.201,** *et seq.*
**(Brought on behalf of the Nationwide Class)**

49.     Plaintiff ARNAUD realleges and incorporates herein by reference all allegations contained above as if fully set forth herein and further alleges as follows:

50.     Plaintiff brings this claim individually and on behalf of the other members of the Class for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

51.     FDUTPA prohibits "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce …." Fla. Stat. § 501.204 (1).

52.     "A deceptive act is an act that is likely to mislead consumers. This 'likely to mislead' standard does not require reliance on the part of the consumer." *Grillasca v. Amerada Hess Corp*., No. 8:05-cv-1736-T-17TGW, 2006 WL 3313719 at *4 (M.D. Fla. Nov. 14, 2006)

53.     "While fraud may be actionable under the FDUTPA, proof of misrepresentation or deceit sufficient to constitute fraud is not a necessary element in all causes of action brought under the FDUTPA." *Motmanco v. McDonald's Corp*., 2005 U.S. Dist. LEXIS 33965, 2005 WL 1027261, *8 (M.D. Fla. 2005)

54.     In outlawing unfair acts or practices, the Florida Legislature adopted the FTC's interpretations of § 5(a)(1) of the Federal Trade Commission Act. Fla. Stat. § 501.204 (2).

55.     The Legislature specifically stated that a violation of FDUTPA "may be based upon . . . [t]he standards of unfairness . . . set forth and interpreted by the Federal Trade Commission . . . ." Fla. Stat. § 501.203 (3)(b).

56.     Under FDUTPA, an act or practice is unfair if it causes consumer injury that is "(1) substantial, (2) not outweighed by any countervailing benefits to consumers or competition, (3) one that consumers themselves could not have reasonably avoided." *Porsche Cars N. Amer. Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014).

57.     FDUTPA provides that "[a]nyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.211 (1).

58.     The Florida Legislature has provided that a person who has suffered a loss as a result of a violation of FDUTPA may recover actual damages, plus attorney's fees and court costs. Fla. Stat. § 501.211(2).

59.     In addition to actual damages caused by a violation, FDUTPA specifically allows for declaratory judgments, actions to enjoin the violator, and permanent or temporary injunctive orders. Fla. Stat. § 501.211.

60.     Defendant's violated FDUTPA by misrepresenting its Products as being "unlimited", giving consumers the false impression of being able to refill their beverages whenever and however many times they wanted, when they in fact are limited to just six (6) beverages per hour every ten (10) minutes.

61.     As a result, Plaintiff and the Class suffered financial injury.

62.     Plaintiff and the Class members seek all applicable compensatory damages and injunction either restraining Defendant from representing that the Products offer unlimited refills, or compelling them to actually provide unlimited refills.

63.     Defendant's actions, as alleged herein, were performed intentionally, willfully, knowingly, and maliciously.


**COUNT III**

**COMMON LAW FRAUD**
**(Brought on behalf of the Nationwide Class)**

64.     Plaintiff ARNAUD realleges and incorporates herein by reference all allegations contained above as if fully set forth herein and further alleges as follows:

65.     Defendant intentionally makes materially false and misleading representations regarding the Products in representing that they provide unlimited refills.

66.     Plaintiff and members of the Class reasonably relied on Defendant's false and misleading representations. They did not know that the Products would not deliver unlimited

beverage refills. Defendant knew and intended that Plaintiff and the Class would rely on its misrepresentation.

67.     Plaintiff and the Class have been injured as a result of Defendant's fraudulent conduct.

68.     Defendant is liable to Plaintiff and members of the Class for damages sustained as a result of Defendant's fraud.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: October 17, 2019

Respectfully submitted,

By: _____*/s/ C.K. Lee*_____
          C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

17